IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

EDWARD KELSCH,                    )          I.D. No. 1208003037
                                 )
        and                      )
                                 )
SANDRA KELSCH                    )          I.D. No. 1208004171
                                 )
        Defendants-Appellants,   )
                                 )
        v.                       )
                                 )
STATE OF DELAWARE,               )
                                 )
        Appellee                 )

**CORRECTED OPINION[1]**

Defendants Edward Kelsch and Sandra Kelsch were both convicted of nineteen counts of Animal Cruelty or Neglect to Animals in the Court of Common Pleas and now appeal to this court.   The events giving rise to this matter occurred at Defendants' residence which is situated along the Delaware and Pennsylvania border.  In their appeal, Defendants argue (1) the State of Delaware failed to establish the State's territorial jurisdiction over the offenses, (2) Kent County SPCA officers did not have the legal authority to apply for and execute a search warrant in New Castle County, and (3) the information failed to put Defendants on sufficient notice of the crimes charged and therefore hindered their ability to prepare a proper defense.

After reviewing the briefs the court *sua sponte* questioned whether it had jurisdiction to hear the appeal from some of the Defendants' multiple

---

[1] This corrected opinion changes the criminal action numbers referred to in this opinion from those of Court of Common Pleas to those of Superior Court. It also changes minor clerical errors.

1

convictions because the sentences imposed for those convictions did not meet the jurisdictional threshold for appeals to this court. At the court's request, the parties made written submittals on the jurisdictional issue. In Part I of this opinion the court holds that it lacks appellate jurisdiction to review some of the convictions because the sentences imposed by the Court of Common Pleas do not satisfy the threshold for this court's jurisdiction. In Part II it affirms the convictions over which it does have appellate jurisdiction.[2]

## Jurisdiction

On several occasions the Delaware Supreme Court has held that the Superior Court's jurisdiction over appeals of criminal convictions in the Court of Common Pleas is limited to those cases in which the trial court imposed a sentence of imprisonment exceeding one month or a fine exceeding $100.[3] An appellant may not aggregate penalties of multiple offenses for the purpose of meeting jurisdiction requirements.[4]

Before examining the specific sentences imposed, the court must address a general issue raised by some of them. In several instances the trial court imposed fines in excess of $100 but then suspended that fine. For example, in 15-07-2186[5] the court-below ordered defendant Edward Kelsch to "Pay a fine of

---

[2]  The court notes that all of Defendants' appellate arguments applied to all of their convictions. Therefore there are no arguments on the merits which the court was not able to consider because of its partial dismissal of this appeal.

[3]  *Kostyshyn v. State,* 2010 WL 3398942 (Del.) ("like this Court, the Superior Court's appellate jurisdiction in criminal matters is limited to cases in which the sentence shall be imprisonment exceeding one (1) month, or a fine exceeding One Hundred Dollars ($100.00)."); *Vincent v. State*, 2006 WL 2787506 (Del.); *Weaver v. State* 779 A.2d 254 (Del. 2001).

[4]  *Marker v. State*, 450 A.2d 397, 399 (Del. 1982); *Hurst*, 2003 WL 1387136, at *1.

[5]  This number corresponds to CCP number 12-08-4028.

2

$1000, of which $1000 is suspended." Defendant was not sentenced to any period of incarceration or probation for that conviction, which means the suspended fine cannot be re-imposed for a violation of probation. There is no set of circumstances, therefore, under which Mr. Kelsch can be required to pay *any* fine for his conviction in 15-07-2186. This court's appellate jurisdiction is determined by the substance, not the language, of the sentence imposed by the court-below, and consequently, the sentence for this conviction does not meet the constitutional threshold. This court therefore lacks jurisdiction to hear the appeal from 15-07-2186 and other convictions for which similar sentences were imposed.

Applying the constitutional thresholds to the sentences imposed below, this court holds it has jurisdiction over only the following:

*Edward Kelsch*

-2183    ($1000 fine, unsuspended)

-2184    ($1000 fine, unsuspended)

-2185    ($1000 fine, unsuspended)

*Sandra Kelsch*

-2203    ($1000 fine, unsuspended)

-2204    ($1000 fine unsuspended)

-2205    ($1000 fine unsuspended)[6]

None of the remaining sentences[7] satisfy the threshold for this court's appellate jurisdiction, and therefore the appeal of those convictions will be dismissed.

---

[6] These numbers correspond to CCP numbers 12-08-4025, -4026, -4027, -4044, -4045, -4046 respectively.

3

## The Merits

The court will now turn to the merits of the portions of the appeal which it has not dismissed.

## Facts

Defendants' house and attached garage are located at 800 Chambers Rock Road in New Castle County, Delaware. The border between Delaware and Pennsylvania runs through that property. On August 3, 2012 officers of the Kent County Society for the Prevention of Cruelty to Animals ("Kent County SPCA"), accompanied by a New Castle County police officer, a New Castle county code enforcement officer and two Pennsylvania officials, executed a search warrant on the property. Before doing so the SPCA officers went to the trouble of satisfying themselves that the house and garage are on the Delaware side of the property.[8]

---

[7] The sentences imposed on Edward Kelsch were:
- -2183 $1000 fine
- -2184 $1000 fine; 6 months suspended for 1 year probation
- -2185 $1000 fine; 6 months suspended for 1 year probation
- -2186 $1000 fine suspended; 30 days suspended
- -2187 $1000 fine suspended; 30 days suspended
- -2188 $1000 fine suspended
- -2189 through -2193, and -2250 community service
- -2194 costs only
- -2195 through -2199, and -2251 costs only

The sentences imposed on Sandra Kelsch were:
- -2200 $1000 fine
- -2201 $1000 fine
- -2202 $1000 fine; 6 months suspended for 1 year probation
- -2203 through -2205 30 days, suspended for 1 year probation
- -2206 through -2210, and -2252 community service
- -2211 costs only
- -2212 through -2217 costs only

[8] Officials from the State of Pennsylvania were also present. May 17, 2013 Tr. at 7.

4

The officers first entered the garage, which they found was infested with "thousands of flies" and smelled of urine and feces. Inside were thirteen dogs confined in small wire cages. Their coats were stained yellow with urine and the animals were living in their own feces. Following the search of the garage, the officers entered the house. Much like the garage there was a strong stench of urine and there were feces on the floors, walls, and kitchen counters. Five dogs, fifteen cats and some ducks had free rein of the house; the cats were using a bed as a litter box. Once the officers removed what they thought were all the dogs in the home and garage, they asked defendant Edward Kelsch whether there were any more dogs. He was untruthful, telling the officers there were no more. Shortly thereafter the officers then found yet another dog, this one was inside a closed, stench-filled room with piles of runny feces on the floor. The dog could not stand and had maggots coming out of its rectum. It was later euthanized by a veterinarian.

The defendants were arrested and charged with misdemeanor offenses and violations concerning their care and treatment of the animals. Sandra Kelsch was charged with: 19 counts of Animal Cruelty or Neglect to Animals; 19 counts of keeping unlicensed dogs; and 19 counts of keeping dogs which had not been inoculated for rabies. Edward Kelsch was charged with 19 counts of Animal Cruelty or Neglect. After a non-jury trial, the Court of Common Pleas found the Defendants each guilty of 19 counts of Animal Cruelty or Neglect to Animals, and acquitted Sandra Kelsch of the license and rabies inoculation

5

charges. There was another consequence of Defendants' conduct—New Castle County declared their house unfit for human habitation.

## Standard of Review

Appeals from the Court of Common Pleas "are on the record and not tried de novo."[9] Where the Court of Common Pleas judge sits as the finder of fact, an appeal from the decision is upon both the law and the facts.[10] The scope of this court's factual review, however, is narrowly circumscribed; it is limited to a determination whether the trial judge's factual findings are "clearly wrong" and justice requires they be overturned.[11] If the findings of fact "are sufficiently supported by the record and are the product of an orderly and logical deductive process, the Superior Court must accept them, even though independently it might have reached opposite conclusions."[12] The evidence is sufficient if, when viewed in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[13]

## Analysis

Defendants make three arguments on appeal: (1) they argue that the State failed to prove that the Court of Common Pleas had jurisdiction over these crimes because it did not prove "convincingly" that the crimes took place in Delaware; (2) they contend that the evidence seized during a search of their

---

[9] *State v. Cagle*, 332 A.2d 140, 142 (Del. 1974). This court applies the same standard of review to an appeal from the Court of Common Pleas as the Supreme Court applies to appeals from the Superior Court. *Id.*

[10] *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972).

[11] *Cagle*, 332 A.2d at 142; *Levitt*, 287 A.2d at 673.

[12] *Cagle*, 332 A.2d at 142.

[13] *Kupchinski v. State*, 2010 WL 1367753, at *2 (Del. Super.).

property was tainted because the SPCA officers conducting the search had not taken an oath of office in New Castle County; and (3) they assert that the Information did not provide them with enough information to prepare a defense because it did not link a specific dog to each of the nearly identical allegations in the Information. These arguments are without merit.

I. **The Court of Common Pleas Had Territorial Jurisdiction Over the Offenses**

Defendants contend that the State failed to establish that the crimes occurred in Delaware and thus the Court of Common Pleas lacked jurisdiction to hear this case. For want of a better term, this court will refer to this as "territorial jurisdiction." In addition to the dispute over whether the evidence is sufficient to support the trial court's find that the crimes occurred in Delaware, there is a dispute over the evidentiary standard to apply to the facts surrounding the jurisdictional issue. The State claims that the appropriate standard is "beyond a reasonable doubt"; whereas, although their briefs waffle a bit, the defendants seem to claim that the State was required to "conclusively" prove that the crimes occurred in this state. This court finds that: (1) "beyond a reasonable doubt"—not "conclusively"—is the standard of proof to be applied here, and (2) there is sufficient evidence in the record to support the Court of Common Pleas' finding that the State proved territorial jurisdiction.

7

### A. The standard of proof for territorial jurisdiction issues is "beyond a reasonable doubt."

Defendants vacillate on the standard of proof for territorial jurisdiction questions in criminal cases. At some points in their briefs they state that the appropriate standard is "beyond a reasonable doubt,"[14] at others they argue the standard is "conclusively;"[15] at still others they argue both;[16] and finally they seem to argue a hybrid standard applies.[17]  All of this means that the court must reexamine the standard of proof applicable here.

The Delaware Code leaves no doubt that the standard to be applied here is "beyond a reasonable doubt." The analysis is a simple one.  First, Title 11 provides that territorial jurisdiction is an element of an offense:  "Facts establishing jurisdiction and venue . . . must also be proved as elements of the offense."[18] Second, Title 11 also provides that the State must prove the existence of the elements of an offense "beyond a reasonable doubt."[19]  It

---

14    Op. Br. D.I. 12 at 8 ("the State bears the burden of establishing, beyond a reasonable doubt, that the offense . . .occurred in the State of Delaware").

15    *Id.* at 12 ("the State failed to conclusively establish that the actions constituting the offense . . . occurred in Delaware."); *Id.* 13 ("the State did not conclusively establish that the crimes . . . occurred in Delaware."); Reply Br. D.I. 17 at 4 ("the conduct constituting the offense . . . must be *conclusively* shown to have taken place in Delaware."[emphasis in original); (the evidence "does not conclusively establish jurisdiction.")("The State was required to conclusively show . . .that the conduct occurred in Delaware.").

16    Op. Br. D.I. 12 at 13 ("the State failed to meet its burden of establishing jurisdiction either conclusively or beyond a reasonable doubt."); Reply Br. D.I. 17 at 4 ("the evidence offered is insufficient to establish jurisdiction conclusively and beyond a reasonable doubt.).

17    Reply Br. D.I. 17 at 4 ("Therefore, the evidence offered is insufficient to establish jurisdiction conclusively and beyond a reasonable doubt.")  With this in mind the court notes the irony of Defendants' contention that the State's proof was "confusing and conflicting." E.g., Reply Br. at 4.

18    11 *Del. C.* § 232.

19    11 *Del. C.* § 301(b) ("No person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt.").  Delaware law similarly provides that "the defendant is entitled to a jury instruction that the jury must acquit if they fail to find each element of the offense proved beyond a reasonable doubt." *Id* at § 302(a).

8

necessarily follows that the Code requires only that the State prove jurisdiction—element of the crime--"beyond a reasonable doubt."

There has been relatively little case law discussing the standard of proof for territorial jurisdiction, perhaps because there is so little question about what that standard is. The case law which does exist, however, shows that the beyond-a-reasonable-doubt standard applies here. In *Sheeran v. State*[20] the defendant challenged his conviction for criminal solicitation on the ground that the State failed to prove the Delaware courts had territorial jurisdiction over his case.  It seems that Sheeran had retained the services of a hit man who, unbeknownst to Sheeran, was an FBI informant.  One of the assignments Sheeran gave him was to beat up an individual in Maryland who was causing problems for Sheeran's labor union.  The FBI secretly recorded three conversations between Sheeran and the informant; one took place in Delaware and the other two took place in Pennsylvania.  The Delaware Supreme Court found the substance of the Delaware conversation was enough to prove an element of the crime occurred in Delaware and therefore established that the Delaware courts had territorial jurisdiction. What is important here is that the Supreme Court applied the beyond-a-reasonable-doubt standard when it made this determination. According to the *Sheeran* Court:

> Sheeran's jurisdictional challenge, in essence, is an assertion that there was insufficient evidence to support the verdict as to that jurisdictional element of each Count. When a defendant challenges his conviction claiming that there was insufficient evidence to support the verdict, this Court determines

---

[20]    526 A.2d 886 (Del. 1987).

whether any rational trier of fact could have found the essential elements of the crime *beyond a reasonable doubt.*[21]

Defendants cite only the Delaware Supreme Court's opinion in *Bright v. State*[22] in support of their contention that the State must prove the territorial jurisdiction "conclusively." *Bright* does not stand for that proposition. The defendant in Bright kidnapped a woman in Delaware and raped (or attempted to rape) her several times as they traversed back and forth across the Delaware-Maryland border. Bright argued that the State never proved Delaware had jurisdiction over the rapes and attempted rapes because, according to him, the State "never conclusively established where the rapes and attempted rapes occurred."[23] The Supreme Court disagreed, and in doing so simply mirrored the verbiage in Bright's argument:

> Because a part of the crime of rape conclusively occurred in Delaware, we are satisfied that Delaware retains jurisdiction to prosecute that offense. Furthermore, we note that this result comports with the sound public policy of insuring that individuals are held accountable for the crimes that they commit. Were Delaware to decline jurisdiction over the rape offenses on the ground that the situs of the sexual intercourse could not be proven, there is no guarantee that Maryland would be able to better prove that the offenses occurred there. This hardly comports with the legislative intent and mandate of 11 *Del.C.* §§ 204 and 2736.[24]

---

[21]  *Id.* at 889 (emphasis added).
[22]  490 A.2d 564 (Del. 1985).
[23]  *Id.* at 566.
[24]  *Id.* at 569–70.

10

For several reasons *Bright* cannot be fairly read as establishing a "conclusively" standard here. First, there is no analysis (or even discussion) in *Bright* of the standard of proof applicable to territorial jurisdictional questions. Given the *Bright* Court's conclusion about the strength of the State's jurisdictional evidence, it seems obvious that the Supreme Court felt it would satisfy any standard. Hence, there was no need for it to examine whether the standard was "beyond a reasonable doubt" or "conclusively." Second, if, as Defendants argue, the Supreme Court intended to adopt a "conclusively" standard, one would expect to see a discussion of aforementioned provisions of the Delaware Code. No such discussion appears in *Bright.* Third, two years after *Bright* the Supreme Court applied the beyond-a-reasonable-doubt standard in *Sheeran*, making no mention of *Bright* in its opinion. Fourth, Defendants do not point to any case in which a court has cited *Bright* for the proposition that a conclusively standard applies, and, insofar as the court's own research discloses, no Delaware court has ever done so. The court concludes, therefore that the standard of proof to be applied is whether the State proved beyond a reasonable doubt that the instant crimes occurred in Delaware.

**B. There is sufficient evidence in the record to support the trial court's finding it had jurisdiction.**

The Court of Common Pleas found that the State had proven beyond a reasonable doubt that these crimes occurred in Delaware. It reasoned:

> In this case, I must only determine whether the State has provided sufficient evidence for a reasonable fact-finder to enter a guilty verdict, not whether the

11

State has in fact proven jurisdiction beyond a reasonable doubt Here, there is more than circumstantial evidence of jurisdiction that was upheld in *Naylor,* there is direct testimonial evidence of proper jurisdiction in the trial record.

First, Officer Shetzler of New Castle County Code Enforcement testified that 800 Chambers Rock Road is located in New Castle County. Shetzler made this determination when he checked the parcel prior to arriving at the investigation. Shetzler posted on the door to the house located at 800 Chambers Rock Road that the residence was declared unfit for human habitation by New Castle County. This direct evidence of Shetzler testifying in his official capacity concerning his investigation of the jurisdiction and his official action of declaring the home unfit in New Castle County could lead a reasonable fact-finder to believe that the home and the attached garage are located in New Castle County, Delaware.

Second, Sgt. Barnes testified that 13 dogs were found in the garage and 6 dogs were found in the home. Barnes' testimony concerning the location of the animals, coupled with Shetzler's testimony that the home is located in New Castle County could lead a reasonable fact-finder to believe that the alleged abuse of these animals, failure to inoculate, and failure to have dog licenses occurred in the home and garage, located in New Castle County, Delaware. Lastly, the State submitted a copy of the mortgage, which states that 800 Chambers Rock Road is in Newark, Delaware. This could also lead a reasonable fact-finder to conclude that the home and garage are located in New Castle County, Delaware.

The role of this court is not to make an independent judgment whether the State proved beyond a reasonable doubt that the crime occurred in Delaware. Rather this court is limited to determine whether there is sufficient evidence to support the Court of Common Pleas' finding. The Supreme Court

described the standard of review in appeals from criminal convictions in the Court of Common Pleas:

> An appeal from a decision of the Court of Common Pleas for New Castle County, sitting without a jury, is upon both the law and the facts. In such appeal, the Superior Court has the authority to review the entire record and to make its own findings of fact in a proper case. However, in exercising that power of review, the Superior Court may not ignore the findings made by the Trial Judge. The Superior Court has the duty to review the sufficiency of the evidence and to test the propriety of the findings below. If such findings are sufficiently supported by the record and are the product of an orderly and logical deductive process, the Superior Court must accept them, even though independently it might have reached opposite conclusions. *The Superior Court is only free to make findings of fact that contradict those of the Trial Judge when the record reveals that the findings below are clearly wrong and the Appellate Judge is convinced that a mistake has been made which, in justice, must be corrected.* Findings of fact will be approved upon review when such findings are based on the exercise of the Trial Judge's judicial discretion in accepting or rejecting 'live' testimony. If there is sufficient evidence to support the findings of the Trial Judge, the Superior Court sitting in its appellate capacity must affirm, unless the findings are clearly wrong.[25]

Defendants' factual arguments on appeal are a rehash of those presented to, and considered by, the Court of Common Pleas. The trial judge observed the witnesses and chose which testimony to credit. He specifically found "the testimony of Officer Shetzler as credible and reliable."[26] As the Supreme Court has said, "[w]hen the determination of facts turns on a question of credibility and the acceptance or rejection of 'live' testimony by the trial judge; his

---

[25] *State v. Cagle,* 332 A.2d 140, 141 (Del. 1974)(emphasis added).
[26] Aug. 14, 2014 Op. at 8.

findings will be approved upon review."[27]   This court therefore cannot say on the basis of this record that the trial judge was "clearly wrong" when he found beyond a reasonable doubt that the instant crimes occurred in Delaware.  As a result, it upholds the Court of Common Pleas' determination it had territorial jurisdiction.[28]

## II.  The Trial Court Properly Admitted the Seized Evidence.

Defendants argue the evidence against them was tainted because (a) the Kent County SPCA officers, who had previously taken an oath of office[29] in Kent County, had not been administered an oath of office in New Castle County; and (b) the SPCA officers lack authority to obtain and execute the search warrant.   The first argument is barred because it was never fairly presented to the Court of Common Pleas; the second is without merit.

### A.  Defendants' state constitutional argument was never fairly presented below.

According to Defendants, the SPCA officers who obtained and executed the search warrant did not take an oath of office in New Castle County until after the search and seizure in this case.   They theorize even though the officers took an oath of office in Kent County, they were obligated by the Delaware Constitution to take another oath of office in New Castle County.  In

---

[27]   *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972) (citation omitted).
[28]    The court notes that the lower court relied on Officer Shetzler's official act of declaring the home unfit for human habitation as evidence that the house was located in New Castle County. An officer's action in a certain area is not, in and of itself, enough to prove the court's territorial jurisdiction.  *See James v. State*, 377 A.2d 15 (Del. 1977).  However, the *James* case is not implicated here because Officer Shetzler's act was predicated on his research on the location of the house through the parcel deed.
[29]   The court has repeatedly used the phrase "oath of office" to distinguish this from the oath the officers took when obtaining the search warrant.

14

the absence of an oath of office in New Castle County, according to Defendants, the seized evidence should have been excluded.

Defendants base their state constitutional argument upon section 1 of article XIV, which provides in pertinent part:

> Members of the General Assembly and all public officers executive and judicial, except such inferior officers as shall be by law exempted, shall, before they enter upon the duties of their respective offices, take and subscribe the following oath or affirmation . . . .

Their argument raises a host of questions. For example:

- Are the SPCA officers "public officers" to whom this section applies?

- Given that the officers took an oath in Kent County, does this provision require they take another oath of office in New Castle County?

- Violations of state law do not, by themselves, establish that a search or seizure was unreasonable under the federal constitution.[30] Therefore, assuming the officers were required to take an oath of office in New Castle County, does the absence of

---

[30] In *Virginia v. Moore*, 553 U.S. 164 (2008) the Court wrote:

> We are aware of no historical indication that those who ratified the Fourth Amendment understood it as a redundant guarantee of whatever limits on search and seizure legislatures might have enacted. The immediate object of the Fourth Amendment was to prohibit the general warrants and writs of assistance that English judges had employed against the colonists. That suggests, if anything, that founding-era citizens were skeptical of using the rules for search and seizure set by government actors as the index of reasonableness.

15

such an oath translate to an unreasonable search and seizure in violation of the constitution?

- The exclusionary rule does not, as a matter of course, apply to all unreasonable searches and seizures.[31] Therefore, assuming the search and seizure here violated the Fourth Amendment because the officers did not take an oath of office in New Castle County, does the exclusionary rule apply to the evidence they seized? The Court of Common Pleas never had the opportunity to consider these critical questions. Indeed it did not even cite to Article XIV, Section 1 in its opinion. All of this is because Defendants never fairly presented their argument to that court.

Defendants' argument below—which was made for the first time two years after the evidence was admitted[32]—made only a passing reference to Article XIV, section 1. Their argument read in its entirety:

> An employee of a non-governmental entity, in this case the Kent County SPCA, has no automatic or general authority to request a search warrant. If such an employee is to be granted such power, it must be authorized under the laws of the State of Delaware, including the Delaware Constitution of 1897. As stated in the New Castle County audit, Section 1.2, "Animal Control Officers and Their Legal Authority", the Constitution applies. Under Article XIV, Section 1,

---

[31] In *Michigan v. Hudson,* 547 U.S. 586, 591 (2006) the Court observed that "[w]hether the exclusionary sanction is appropriately imposed in a particular case is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct."

[32] The evidence was admitted at trial in March and May 2013. Defendants first raised their argument in April, 2015 when they filed a "Motion to Vacate Judgment." The delay in presenting this argument to the trial court may be an independent reason for denying it. The court does not reach that issue here.

> public officers must take the oath of office before entering upon the duties of their respective offices. Kent County SPCA employees must be formally sworn in before exercising legal authority as animal control officers.

Nowhere did Defendants analyze the language of the particular constitutional provision; nowhere did they explain to the trial court why the provision requires the result they seek, and nowhere did they cite any opinions interpreting or applying the provision. In other words, the entirety of their argument consists on a single mention of the Delaware constitution.

This brief argument below falls short of fairly presenting an argument to the Court of Common Pleas. In *Stafford v. State*[33] the Delaware Supreme Court found that a similar perfunctory argument did not fairly present an issue to the trial court:

> Stafford claimed that his detention violated Article 1, Section 6 of the Delaware Constitution. Although Stafford correctly notes that the Delaware Constitution provides protection from unreasonable searches and seizures, he offers no further explanation or elaboration of this argument. We do not recognize Stafford's conclusory assertion that the Delaware Constitution was violated as a reasoned argument. Stafford therefore waived any claim under the Delaware Constitution by failing to explain his contentions.[34]

The *Stafford* Court also noted that "[w]e have previously described criteria for properly presenting a claim under the Delaware Constitution [in *Jones v.*

---

[33] 59 A.3d 1223 (Del. 2012).
[34] *Id.* at 1231–32.

17

State]."[35] Defendants never addressed any of those criteria. Their failure to do so is fatal:

> Failure to do that operates as a waiver of the claim. Accordingly, to raise a cognizable claim under the Delaware Constitution . . . [Defendant] must include an analysis of the *Jones* criteria in both the Summary of Argument and the Argument portions of his opening brief. Because he has not done that, [Defendant] has not fully and fairly presented his Delaware constitutional claim to this Court, and we decline to address it.[36]

Accordingly, the court finds that Defendants failed to fairly present their state constitutional argument to the Court of Common Pleas, and therefore this court will not consider it.

### B. The SPCA officers had statutory authority to obtain and execute the search warrant.

Defendants also argue the Kent County SPCA Officers' authority was limited to Kent County and they lacked authority to apply for and execute a search warrant in New Castle County. In their Reply Brief before this court they assert:

> [A]lthough the State was correct in its assertion that Kent County SPCA was granted statutory authority to apply for, and execute a search warrant, its argument fails because the State failed to recognize that the relevant statutes distinguish between the Delaware SPCA and the Kent County SPCA did not have statutory authority to apply for, and execute, a search warrant in New Castle County.[37]

---

[35] *Id.* at 1232, n.50 *citing Jones v. State*, 745 A.2d 856 (Del. 1999).
[36] *Munroe v. State*, 70 A.3d 154, 158 (Del. 2009).
[37] Reply Br. 8.

18

Their argument is based on the erroneous assumption that at the time of these events the Delaware Code geographically limited the authority of the Kent County SPCA. In their brief they cite *3 Del. C.* §7904 for the proposition that "the authority to execute a warrant of arrest, or a search warrant, is again conferred to the Delaware SPCA in Sussex and New Castle Counties; the Kent County SPCA is granted this authority only in Kent County."[38] It is true that, at one time, section 7904 (then denominated section 7903),[39] limited Kent Count SPCA's jurisdiction to that county:

> Any warrant of arrest, or other process, issued under or by virtue of the several laws in relation to cruelty to animals, may be directed to and executed by any agent in Sussex and New Castle Counties of this State, so appointed by The Delaware Society for the Prevention of Cruelty to Animals or in Kent County of this State so appointed by the Kent County Society for the Prevention of Cruelty to Animals. No compensation shall be paid to the agent except by the Society.[40]

But the General Assembly amended the statute in 2010[41] to give both the Delaware SPCA and Kent County SPCA state-wide jurisdiction. In 2012, when these events occurred, section 7904 provided:

> Any warrant of arrest, or other process, issued under or by virtue of the several laws in relation to cruelty to animals may be directed to and executed by any agent so appointed by *either* the Delaware or Kent County Society for the Prevention of Cruelty to Animals of this State. No compensation shall be paid to the agent except by the societies.[42]

---

38  Reply Br. 8.
39  Section 7903 was re-designated § 7904 in 2005.
40  3 Del. C. §7903 (repealed).
41  77 Del. Laws ch. 393 (2010).
42  3 *Del. C.* §7904 (emphasis added).

19

The court therefore finds no merit to Defendant's contention that the Kent County SPCA lacked statutory authority to act in New Castle County.

### III. Defendants Had Adequate Notice of the Crimes Charged

Defendants argue that the Information failed to give them sufficient notice of the crimes charged and therefore hindered their ability to prepare a proper defense. They assert that it did not specify "which of the 19 dogs corresponded to which count in the indictment, nor [did the Information describe] what specific acts constituted the alleged cruelty on the part of the defendants."[43] The court finds that the Information provided sufficient information to apprise Defendants of the charges against them and that the State was not required to match each paragraph of the complaint to a specific dog. Further, Defendants were not prejudiced by the alleged deficiencies in the Information.

### A. The Information provided adequate notice to Defendants of the conduct alleged to be unlawful.

The black letter law here is straightforward. An Information "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."[44] It is sufficient if it "alleges facts concerning the commission of a crime charged . . . to put the accused on full notice of what he is charged with" and it enables the "defendant to adequately prepare his

---

[43] Appellants' Opening Brief at 20.
[44] Ct. Com. P. Crim. R 7(c)(1).

20

defense and protect himself against double jeopardy."[45] The Information in this case satisfies those requirements. The pertinent portions allege each Defendant committed 19 acts of animal cruelty. There is no material difference in the allegations. The following is a representative sample:

> Cruelty or Neglect to Animal in violation of Title 11, Section 1325(b)(2) of the Delaware Code of 1974, as amended.

> EDWARD A. KELSCH, on or about the 6th day of July, 2012, in the County of New Castle, State of Delaware, did intentionally subject a dog, within his custody to cruel neglect, to wit: did allow a canine to live in unsanitary condition which was injurious to animal's health.

The Supreme Court has upheld an Information where it "identifies the crime; states where and when it allegedly occurred; and describes the elements of the crime."[46] The elements of the crime are (1) the defendant intentionally or recklessly (2) subjects an animal in the defendant's custody to (3) cruel neglect.[47] The Information filed in this case supplies all of that. Indeed, it (1) identifies the crime both by statute and description, (2) identifies that it took place in New Castle County on or about July 6, 2012 and (3) describes the elements of the crime and put Defendant on notice he was charged with the crime because he allowed a dog to live in unsanitary conditions which were injurious to its health. The court has difficulty fathoming what information is

---

[45] *Holland v. State*, 194 A.2d 698, 553 (Del. 1963).
[46] *Wright v. State*, 2011 WL 51415 (Del.).
[47] 11 *Del. C.* § 1325(b)(2). The statute provides a "person is guilty of cruelty to animals when the person intentionally or recklessly . . . [s]ubjects any animal in the person's custody to cruel neglect."

21

missing. Nowhere do Defendants identify what additional information about their conduct they needed to prepare a defense.

An important consideration when evaluating the sufficiency of an indictment or information is whether the defendant is prejudiced by its ostensible shortcomings. For example, the Delaware Supreme Court has written that "[d]ue to our view of the indictment in the present case coupled with the fact that defendant has not shown any prejudice going to the preparation of his defense, we conclude that defendant was adequately informed of the charges against him and hence, the indictment was constitutionally sufficient."[48] In the instant matter the trial court found that Defendants "suffered no prejudice in their ability to defend against those charges, and can point to no specific instance of prejudice actually occurring."[49] Despite this Defendants say nothing about prejudice in their briefs before this court.

The absence of any real prejudice is underscored by Defendants' failure to raise this issue before trial. Despite the absence of ostensibly critical information, Defendants never sought a bill of particulars. As the Delaware Supreme Court wrote in *Howard v. State,*[50] "[i]f Howard was uncertain of what specific conduct he was being prosecuted for, it was his burden to move for a bill of particulars."[51] Further, the instant defendants delayed bringing the alleged defects in the information to the attention of the trial court until well

---

[48] *Ciccaglione v.* State, 474 A.2d 126, 128 (Del. 1984).
[49] Decision After Trial, at 7.
[50] 2009 WL 3019629 at 4.
[51] *Id.* at *4.

22

after those purported defects could have been cured. Court of Common Pleas Criminal Rule 12 requires that "[d]efenses and objections based on defects in the information must be raised by motion before trial." Here the trial court also set a deadline of April 12, 2013 for the filing of pre-trial motions, yet Defendants filed nothing challenging the adequacy of the Information. It was not until June, 2014—more than a year after the trial began—that Defendants first challenged the sufficiency of the information. During the course of closing argument counsel for one of the defendants told the court-below "the State's got a real problem in terms of the indictment."[52] Consistent with their approach in this court, Defendants did not tell the trial judge how they had been prejudiced by the purportedly insufficient information.

In *Malloy v. State*[53] the Delaware Supreme Court summarized the law in a manner which reads as if the Supreme Court had this case in mind:

> The courts of this State have consistently viewed an indictment as performing two functions: to put the accused on full notice of what he is called upon to defend, and to effectively preclude subsequent prosecution for the same offense. These purposes are fulfilled if the indictment, as required by Rule 7(c), contains a plain statement of the elements or essential facts of the crime. Instead, his challenge arose by motion for judgment of acquittal under Superior Court Criminal Rule 29(a) at the end of the prosecution's case-in-chief. Such a long delay in raising the issue suggests a purely tactical motivation of incorporating a convenient ground of appeal in the event the jury verdict went against the defendant. Furthermore, the fact of the delay tends to negate the possibility of

---

[52] June 10, 2014 Tr. at 19.
[53] 462 A.2d 1088 (Del. 1983).

23

> prejudice in the preparation of the defense. Thus, Malloy's claim that the indictment was defective will be unavailing unless the indictment cannot, by the most liberal construction, be said to have imparted notice to him.[54]

Under this standard the Information filed here was more than sufficient.

For their part Defendants rely upon the Delaware Supreme Court's opinion in *Luttrell v. State*.[55] Defendants do not note in their briefs before this court that the Court of Common Pleas held that their reliance on *Luttrell* was procedurally barred because of their delay in bringing it to the trial court's attention. The Court of Common Pleas rendered its written judgment on August 15, 2014, but Defendants waited more than a month—until September 24—to file a motion for reargument based upon *Luttrell.* The Court of Common Please held that their motion was barred because it was filed more than five days after its ruling.[56] Even so the Court of Common Pleas, perhaps out an abundance of caution, briefly commented on the *Luttrell*-argument's lack of merit. This court will follow suit.

The court-below correctly found that *Luttrell* is critically distinct from the instant matter. The defendant in *Luttrell* was charged with a variety of differing sex crimes. Before trial he sought a bill of particulars which the Superior Court denied. On appeal the Supreme Court held that this court erred in denying Luttrell's request for a bill of particulars because the allegations in the

---

[54] *Id.* at 1092–93 (Quotation marks, editing marks and citations omitted).
[55] 97 A.3d 70 (Del. 2014).
[56] Court of Common Pleas Criminal Rule 49(d) permits a judge to apply analogous civil rules to procedural matters not covered by the court's criminal rules. Here the trial judge applied the five day limitation for motions for reargument found in Court of Common Pleas Civil Rule 59(e).

indictment did not allow Luttrell to ascertain which of his acts was the subject of which of the differing allegations in the indictment. One difference between *Luttrell* and this case is immediately apparent. The *Luttrell* Court observed that "[t]his Court has explained that, where the defendant is "uncertain of what specific conduct he was being prosecuted for, it is the defendant's burden to move for a bill of particulars."[57] Unlike Luttrell, the instant defendants never sought a bill of particulars.

On a broader level *Luttrell* is materially distinct because the crimes with which Luttrell was charged differed, thus making it necessary for him to learn what part of his conduct corresponded to what allegation in the indictment. Such is not the case here. There is no material difference between any of the allegations of Animal Neglect and Abuse in the Information. Thus any of the dogs fit any of the neglect and abuse allegations. Put another way, Defendants have not shown how it made any difference whether Dog-1 was the subject of Paragraph 1 or 2 or 3, etc. of the Information since all of those paragraphs are the same. In *State v. Burke* Judge Rocanelli of this court also distinguished *Luttrell* where the same conduct gave rise to similarly worded allegations in the Indictment:

> With respect to Defendants' motion for a bill of particulars on the stalking charge, the *Luttrell* case is distinguishable because the *Luttrell* indictment charged the defendant with multiple counts of the same type of conduct, to the point where the defendant could not distinguish what conduct applied to which charge. Here, however, there is no confusion—and Defendants assert no confusion—in

---

[57] *Id.* at 75.

25

determining the difference in the underlying conduct between the counts because there is only one charge for each type of conduct.

In sum, the court holds that Defendants have failed to argue, much less show, that any required information was omitted from the Information, and they have failed to show they were prejudiced by any purported omission of such information. Their delay in bringing argument to the attention of the Court of Common Pleas satisfies this court that that Defendants did not believe they were hindered in preparing a defense. In the words of the *Malloy* Court, the "long delay in raising the issue suggests a purely tactical motivation of incorporating a convenient ground of appeal in the event the jury verdict went against the defendant."

### Conclusion

The appeal in this matter is **DISMISSED IN PART** because this court lacks jurisdiction to hear the appeal from convictions -2186, -2187, -2188, -2189, -2190, -2191, -2192, -2193, -2250, -2194, -2195, -2196, -2197, -2198, -2199, -2251, -2203, -2204, -2205, -2206, -2207, -2208, -2209, -2210, -2252 , -2211, -2212, -2213, -2214, -2215, -2216, and -2217. The remaining convictions, -2183, -2184, -2185, -2200, -2201, and -2202,[58] are **AFFIRMED**.

July 28, 2016

_____
John A. Parkins, Jr.
Superior Court Judge

---

[58] These numbers correspond to CCP numbers 12-08-4028, -4029, -4030, -4031, -4032, -4033, -4034, -4035, -4036, -4037, -4274, -4275, -4276, -4277, -4278, -4279, -4044, -4045, -4046, -4047, -4048, -4049, -4050, -4051, -4052, -4053, -4280, -4281, -4282, -4283, -4284, -4285, -4025, -4026, -4027, -4041, -4042, -4043 respectively.

26

oc:    Prothonotary
cc:    All counsel of record